# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| FREDDIE WALKER, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 6:21-cv-3235-NKL |
| v. | ) | |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | | |

## ORDER

Plaintiff Freddie Walker seeks review of the denial by the Commissioner of the Social Security Administration (the "Commissioner") of his application for Disability Insurance Benefits. Mr. Walker argues that the Commissioner improperly found his anxiety and depression to be mild impairments and improperly assessed his residual functional capacity ("RFC"). For the reasons discussed below, the Commissioner's decision is REVERSED and REMANDED for further proceedings.

## I.      Background

Mr. Walker applied for Disability Insurance Benefits on November 19, 2019. Tr. 164–65. He claimed that, since May 14, 2018, he suffered from disabling mental and physical impairments. *Id.* Relevant to this appeal, Mr. Walker claimed he suffered from severe depression and anxiety, which among other things, affected his ability to concentrate, remember, follow instructions, and sleep. Tr. 541. Mr. Walker reported that he was concerned about his cognitive ability to perform his work, Tr. 545, and clinical testing consistently demonstrated that he suffered from severe anxiety and depression. Tr. 588, 607, 614. Mr. Walker's claim was initially denied, and Mr.

Walker requested a hearing before an administrative law judge ("ALJ"). On March 29, 2021, ALJ Christina Young Mein held a hearing on Mr. Walker's claims. Tr. 18.

After the hearing, the ALJ applied the five-step process defined in 20 C.F.R. § 404.1520(a). She concluded that Mr. Walker had several severe impairments: degenerative disc disease, obesity, and mild degenerative changes of the knees. Tr. 12. The ALJ concluded that Mr. Walker also suffered from multiple non-severe impairments, including depression and anxiety, which resulted in no more than mild limitations in the four functional areas of mental functioning—also known as the "paragraph B" criteria. Tr. 13–14. At Step Three, the ALJ concluded that none of Mr. Walker's impairments—individually or cumulatively—met or equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 14. The ALJ then found that Mr. Walker retained the RFC to:

> perform light work as defined in 20 CFR 404.1567(b) except he can lift and carry 20 pounds occasionally and 10 pounds frequently. He can sit 6 hours and stand or walk 6 hours in an 8-hour workday. He can occasionally climb ramps and stairs but never climb ladders, ropes or scaffolds. He can occasionally balance on uneven surfaces, stoop, kneel, crouch and crawl. He needs to avoid concentrated exposure to extreme cold and heat, humidity, noise, vibration, fumes, odors, dusts, gases and poor ventilation. He cannot work around unprotected heights or hazardous unshielded moving machinery.

Tr. 8. The ALJ did not include any limitation based on any of Mr. Walker's mental impairments. The ALJ then determined that Mr. Walker could perform past relevant work, and he was therefore not disabled. Tr. 18.

Mr. Walker appealed the ALJ's decision to the Appeals Council on June 1, 2021, which ultimately affirmed the ALJ's decision. Accordingly, the ALJ's decision is a final decision of the Commissioner and is ripe for judicial review.

## II. Legal Standard

The Court must affirm the Commissioner's denial of social security benefits so long as "there was no legal error" and "the findings of fact are supported by substantial evidence on the record as a whole." *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016) (internal citation omitted). "Substantial evidence is less than a preponderance but enough that a reasonable mind would find it adequate to support the ALJ's conclusion." *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015) (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)). The Court must consider evidence that both supports and detracts from the ALJ's decision. *Id.* "[A]s long as substantial evidence in the record supports the Commissioner's decision, [the Court] may not reverse it because substantial evidence [also] exists in the record that would have supported a contrary outcome, or because [the Court] would have decided the case differently." *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015) (quotation marks and citation omitted). The Court must "defer heavily to the findings and conclusions of the Social Security Administration." *Michel v. Colvin*, 640 F. App'x 585, 592 (8th Cir. 2016) (quotation marks and citations omitted).

## III. Discussion

Mr. Walker claims that the ALJ erred by finding that his anxiety and depression were non-severe impairments. He argues that the ALJ's severity analysis rests on a selective reading of the medical evidence, erroneous consideration of medical expert opinions, and an improper analysis of his daily activities. He further argues that, even if his mental impairments were not severe, they should have been addressed in the RFC. As discussed in more detail below, the ALJ erred in determining that Mr. Walker's anxiety and depression are non-severe, and remand is warranted. Because Mr. Walker's impairments should have been considered severe, the Court does not reach

Mr. Walker's second argument, that even non-severe mental limitations must be incorporated into the RFC.

### A. Whether the ALJ Erred in Her Analysis of Mr. Walker's Mental Impairments

At Step Two, the ALJ is tasked with determining whether a claimant's impairments are "severe." 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is one which "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The ALJ must evaluate the record and determine whether an impairment affects a claimant's ability to work; if an impairment would have "no more than a minimal" effect on the claimant's ability to work, it is not severe. *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007); 20 C.F.R. § 404.1520(c). While it is the claimant's burden to establish that his or her impairment or combination of impairments is severe, *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000), it "is not an onerous requirement for the claimant to meet[.]" *Kirby v. Astrue*, 500 F.3d 705, 708 (8th Cir. 2007) (internal citation omitted). Indeed, it is only a *de minimis* standard, *Bowen v. Yuckert*, 482 U.S. 137, 154 (1987), and all doubts should be resolved in the claimant's favor. *Kirby,* 500 F. 3d at 707–08.

#### 1. The ALJ's Severity Analysis

The ALJ found that Mr. Walker had the "medically determinable mental impairments of depressive disorder and anxiety disorder," but found that they, "considered singly and in combination, do not cause more than minimal limitations to his ability to perform basic mental work activities[.]" Tr. 13. The ALJ addressed each of the broad functional areas of mental functioning.

First, she explained that Mr. Walker alleged that he struggled understanding what was said to him, following instruction, and completing tasks. However, the ALJ found Mr. Walker's ability

to perform simple maintenance, pay bills, go to doctor's appointments, take medication, shop, and drive contradicted his allegations. Furthermore, the ALJ concluded that the medical records show Mr. Walker was able to follow instructions from healthcare providers, comply with treatment, and respond to questions.

Second, she reasoned that Mr. Walker's claimed difficulty engaging in social activity conflicted with his ability to shop, get along with others, deal with authority, and live with others. From the medical evidence, the ALJ deduced that Mr. Walker was pleasant and cooperative and had good interactions with non-medical staff. Tr. 13.

Third, while Mr. Walker claimed he struggled to concentrate, persist, and maintain pace, the ALJ reasoned that Mr. Walker can drive, watch TV, manage funds, use the internet, and handle his own medical care. Tr. 13.

Finally, the ALJ found Mr. Walker had mild limitations in his ability to adapt or manage himself. Mr. Walker claimed that he struggled to handle change, bathe, and manage his mood, but the ALJ found that those complaints were minimized by Mr. Walker's ability to take care of himself and his pets, his ability to get along with medical providers and staff, and his "normal mood and affect." Tr. 14.

In reaching her conclusions, the ALJ credited the opinions of Dr. Scher and Dr. Morgan, two state agency medical consultants. They each concluded that Mr. Walker had only mild mental health limitations. Each found that Mr. Walker "sought mental health treatment and had decreased moods[,] but otherwise mental status examinations were within normal limits[.]" Tr. 18. The ALJ found these opinions were supported by internal citations to Mr. Walker's medical records and were overall consistent with the record, and she therefore found them persuasive. She was not, however, persuaded by the opinion provided by Dr. Meadows, Mr. Walker's treating mental health

professional.  Dr. Meadows opined that Mr. Walker's depression and anxiety caused moderate to marked limitations to his mental functioning.  The ALJ discounted Dr. Meadow's opinion because it included no narrative explanation or direct citations; instead, it is a checked-box form.  The ALJ further found Dr. Meadow's opinion to be inconsistent with the record, which she suggests shows Mr. Walker received a conservative course of mental health treatment, often had normal mental status examinations, and was able to perform a variety of activities.  Tr. 18.

The ALJ also found that Mr. Walker sought minimal mental health treatment, and that there was no evidence of inpatient psychiatric care since the alleged onset date.  The ALJ noted that Mr. Walker was prescribed antidepressant medication and attended therapy—though she does not discuss the efficacy of either treatment.  Tr. 17.  She did highlight that Mr. Walker's health care providers stated he was a "higher risk for halting therapy prematurely related to impatience, critical attitudes towards doctors, and evaluations that no one really listens to him (depression)."  Tr. 17. The ALJ further explained that, while Mr. Walker's treatment notes indicated abnormalities of mood, affect, and preoccupied attention, Mr. Walker's examinations were typically "within normal limits with normal mood, normal behaviors, normal speech, normal thought content, no suicidal ideation, normal perceptions, normal attention, and normal judgment."  Tr. 17.

Mr. Walker argues substantial evidence does not support this outcome for several reasons. First, Mr. Walker argues that the ALJ erroneously weighed the opinions of relevant medical experts.  Second, he argues that the ALJ's evaluation of his daily activities is not supported by substantial evidence.  Finally, Mr. Walker argues that the record as a whole demonstrates that his mental impairments are in fact severe.  The Court will address each in turn.

**B.  Whether the ALJ Erred in Her Evaluation of the Medical Evidence**

Mr. Walker faults the ALJ for crediting the opinions of state agency physicians Dr. Scher and Dr. Morgan, and for discrediting the opinion of Dr. Meadows, Mr. Walker's treating physician.

On June 4, 2020, medical consultant Dr. Scher, a mental health professional, reviewed Mr. Walker's medical records that were available at that time and opined on his mental impairments and their impact on his ability to do work.  Tr. 62–65.  Dr. Scher did not treat or personally evaluate Mr. Walker.  From his review, Dr. Scher determined that Mr. Walker's psychological conditions caused mild limitations to his functioning, including difficulty interacting with others; maintaining concentration, persistence, or pace, understanding, remembering, or applying information; and adopting or managing himself.  Tr. 64.  Dr. Scher noted that Mr. Walker reported that his depression affects his ability to manage his personal hygiene, that it can affect his comprehension and understanding, and Mr. Walker avoids others and sleeps when his depression peaks.  Mr. Walker also reported that his ability to handle stress had worsened and that he does not handle change well.  Tr. 64.  Nonetheless, because Mr. Walker could prepare simple meals, help with laundry, handle minor household repairs, walk, drive, shop, and manage finances, Dr. Scher discounted Mr. Walker's complaints.  Dr. Scher also noted that Mr. Walker had no issues with authority figures and could follow written instructions.  Tr. 65.  It appears Dr. Scher credited Mr. Walker's allegations that he had an attention span between 1–2 hours and that he struggled to follow oral instructions.  Tr. 65.  The ALJ found Dr. Scher's opinion persuasive, and found that the evidence showed that Mr. Walker had sought mental health treatment and experienced "decreased moods[,]" but "otherwise mental status examinations were within normal limits[.]"  Tr. 18.

On August 26, 2020, Dr. Morgan, another consulting examiner, also determined that Mr. Walker had only mild mental health limitations. Tr. 73–74. With little additional narrative explanation or reasoning, Dr. Morgan affirmed the findings of Dr. Scher. Tr. 74. The ALJ credited Dr. Morgan's opinion, and found it supported by his references to the evidence and consistent with the record overall. Tr. 18.

Mr. Walker's treating mental health care provider Dr. Meadows, on the other hand, opined that Mr. Walker suffered from numerous moderate and marked limitations in his mental functioning. Tr. 539–40. Dr. Meadows concluded that Mr. Walker would have bad days resulting from his Recurring Mild Major Depression and Generalized Anxiety Disorder that would result in him missing more than four days of work each month. Tr. 539. He further concluded that Mr. Walker would be off task more than 25% of the time because of the effects of anxiety and depression. Dr. Meadows evaluated over 20 different measures of mental functioning, each falling under one of the four broad categories used by the Commissioner to evaluate the severity of mental impairments. *Id.* He explicitly based his opinion on his own clinical findings (for example, the results of mental status examinations he performed), clinical diagnoses he made, and treatment that he proscribed and oversaw. Tr. 540.

Relevant to understanding and memory, Dr. Meadows concluded that Mr. Walker was markedly limited in his ability to remember and understand both very simple and detailed instructions, and moderately limited in his ability to remember locations and work-like procedures. Tr. 539.

Relevant to concentration and persistence, Dr. Meadows found that Mr. Walker was markedly limited in his ability to carry out both very simple and detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain

regular attendance, be punctual, to complete a normal workday and workweek without interruption from his mental impairments, and to perform at a consistence pace without unreasonable breaks. Tr. 540. Mr. Walker was further moderately limited in his ability to sustain an ordinary routine without special supervision, work in coordination or proximity to others without being distracted, and make simple work-related decisions. Tr. 540.

Dr. Meadows noted various mild social limitations, including limitations to Mr. Walker's ability to interact appropriately with the public, ask simple questions or request assistance, get along with coworkers without distracting them or exhibiting behavioral extremes, maintain socially appropriate behavior, and adhere to basic standards of neatness and cleanliness. Tr. 540. Dr. Meadows further concluded Mr. Walker had a moderate limitation to his ability to accept instruction and criticism from supervisors.

Finally, with respect to Mr. Walker's ability to adapt, Dr. Meadows concluded that Mr. Walker had mild limitations to his ability to respond to changes in the work setting and to be aware of normal hazards and take precautions. Tr. 540. Further, Dr. Meadows found moderate limitations to Mr. Walker's ability to set realistic goals and work independently of others, and marked limitations in his ability to travel in unfamiliar places or use public transportation. The ALJ disregarded Dr. Meadow's opinion in its entirety because it was inconsistent with the record and because he offered little narrative support or specific citations to medical evidence.

Mr. Walker appears to first argue that because Dr. Scher and Dr. Morgan never personally examined him, their opinions cannot constitute substantial evidence. In claims like this one, filed after March 27, 2017, the Agency does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources." 20 C.F.R. § 404.1590c(a); *Guetzloff v.*

*Kijakazi*, No. 2:20-CV-04177-NKL, 2021 WL 5157487, at **5–6 (W.D. Mo. Nov. 5, 2021) (discussing change in regulations regarding the analysis of medical evidence) (internal citations omitted). Thus, to the extent that Mr. Walker attempts to invoke the pre-2017's "treating physician rule," that argument must fail. Put simply, the framework which created a hierarchy for medical opinion evidence—invoked by Mr. Walker and discussed by the pre-March 27, 2017, Eighth Circuit cases he cites—no longer exists.

However, even under the new regulations, the ALJ must determine the persuasiveness of the opinion and articulate how she considered the factors of supportability and consistency—which are the two most important factors for determining persuasiveness. 20 C.F.R. § 404.1520c(b). The ALJ must also explain whether, and to what extent, she finds an expert opinion to be persuasive, and substantial evidence must support that explanation. *Guetzloff*, 2021 WL 5157487, at *5 (internal citations omitted). The ALJ must further consider the relationship between the medical source and the claimant, even if she need not do so in writing. In short, the fact that neither consultative examiner personally treated or examined Mr. Walker, and that Dr. Meadows did so numerous times, are factors to consider when determining whether the ALJ's conclusion to fully credit Dr. Scher and Dr. Morgan and completely disregard Dr. Meadows is supported by substantial evidence. As the Court explains below, substantial evidence does not support the ALJ's consideration of these factors.

To begin, the ALJ discounted Dr. Meadows' opinion because it was presented as a checked box form, offered with little narrative support and no direct citations to evidence in the record. The Eighth Circuit has concluded that ALJs can discount medical opinions when they are presented as checked box forms. This is because, according to the Eighth Circuit, without citations to evidence and narrative explanation, checkbox forms have little evidentiary value. *Adkins v.*

*Comm'r, Soc. Sec. Admin.*, 911 F.3d 547, 550 (8th Cir. 2018) (citations omitted); *Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018). That said, Dr. Meadows' opinion was not completely devoid of context and support. He explicitly notes that his opinions were based on his clinical findings, diagnoses, and treatment relationship with Mr. Walker. Tr. 540. The ALJ cannot just ignore these citations simply because Dr. Meadows did not provide specific citations to individual records or additional narrative explanation beyond what is contained in his voluminous treatment notes. While the ALJ was permitted to discount the persuasive value of Dr. Meadows' opinion because it was presented as a checked box form, that alone is not enough to reject it as not supported in its entirety. Dr. Meadows' opinion, supported by his treatment notes with easily accessible supporting information and his direct experience managing Mr. Walker's anxiety and depression, is not wholly without support. This is especially so when compared against the opinions of the consultative examiners, who both formed their opinions having never examined Mr. Walker and without reviewing many—if not most—of the medical records pertaining to Mr. Walker's anxiety and depression.[1]

Relatedly, Mr. Walker argues that the ALJ erred by crediting the opinions of Dr. Scher and Dr. Morgan, because they both formed their opinions before Dr. Meadows' treatment notes were in the record. Dr. Scher issued his opinion on June 4, 2020, *see* Tr. 65, and Dr. Morgan issued his on August 26, 2020. *See* Tr. 74. Accordingly, neither had access to any of the treatment notes discussing Mr. Walker's psychological treatment with Dr. Meadows because this evidence was

---

[1] As the Court discusses in more detail below, even a finding that Dr. Meadows' opinion was not sufficiently supported would not be enough to reject it in its entirety. Supportability is but one of the factors an ALJ must considered. Dr. Meadows' opinion is consistent with the medical record and, while the ALJ need not describe her consideration of these factors, that Dr. Meadows treated Mr. Walker and did so for a long period of time both also support the persuasive value of Dr. Meadows' conclusions.

not made part of the record until February and April 2021. Tr. 556, 584; *see also* Tr. 59 (ALJ explaining that she was leaving the record open to "get detailed treatment notes from the Mercy Psychology Clinic."). Mr. Walker argues that this evidence demonstrates more extensive restrictions stemming from Mr. Walker's anxiety and depression. The absence of this "longitudinal record" of Mr. Walker's condition, which includes scores from several Patient Health Questionnaire-9 ("PHQ-9")[2] and Generalized Anxiety Disorder-7 ("GAD-7")[3] examinations, Tr. 588, 607, 614, and the opinion evidence from Dr. Meadows, meant that neither Dr. Scher nor Dr. Morgan reviewed objective medical evidence demonstrating Mr. Walker's "preoccupied attention and depressed, discouraged, and anxious mood." *See* Doc. 8, at 12 (Pl.'s Social Security Brief); *see also* Tr. at 543, 557, 561, 564, 569, 572, 575, 587, 590, 593, 596, 599, 603, 605–06, 610, 612, 618.

An ALJ does not automatically err by crediting a medical opinion that was rendered without the benefit of a claimant's full medical record. *See McCoy v. Saul*, No. 4:19-CV-00704, 2020 WL 3412234, at *9 (W.D. Mo. June 22, 2020) (holding that ALJ did not err in finding medical consultant's opinion persuasive even though that opinion was reached before more than 300 pages of additional medical evidence had been adduced); *Kuikka v. Berryhill*, No. 17-cv-374, 2018 WL 1342482, at *10 (D. Minn. Mar. 15, 2018) ("[A]n ALJ may embrace a state agency

---

[2] The PHQ-9 is used to screen, diagnose, monitor, and measure the severity of depression. A score of 15 to 19 represents moderately severe depression while a score of 20 or greater is indicative of severe depression. Kroenke, et al., *The PHQ-9: Validity of a Brief Depression Severity Measure*, 16 J.Gen.Intern.Med 606-13. Available at:
https://www.ncbi.nlm.nih.gov/pmc/articles/PMC1495268/ (last accessed May 10, 2022).

[3] The GAD-7 is used to screen for and assess the severity of generalized anxiety disorder. Scores between 15 and 21 are indicative of severe anxiety. Spitzer, et al., *A Brief Measure for Assessing Generalized Anxiety Disorder: The GAD-7*, 166 Arch.Intern.Med. 1092–97. Available at:
http://archinte.ama-assn.org/cgi/reprint/166/10/1092 (last accessed May 10, 2021).

psychological consultant's opinion even if it was made before the record was fully developed.") (internal citation omitted). This is because the ALJ is ultimately responsible for assessing the RFC. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012) ("Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner."). As such, an ALJ can rely on the "opinion of a state agency medical consultant who did not have access to all the records, so long as the ALJ conducts an independent review of the evidence and takes into account portions of the record the consultant had not considered." *Kuikka*, 2018 WL 1342482, at *10.

However, it is not clear that the ALJ did so here, and even if she did, substantial evidence does not support the conclusion that she reached. While the ALJ at times *cites* the treatment notes, she does not discuss any of the evidence they contain or address the numerous ways in which they contradict her opinion. Here, the ALJ reported that Mr. Walker's examinations "occasionally noted abnormalities of mood/affect and preoccupied attention." Tr. 17. Otherwise, the ALJ concluded, his examinations "were typically within normal limits with normal mood, normal behaviors, normal speech, normal thought content, no suicidal ideation, normal perceptions, normal attention, and normal judgment." Tr. 17–18. The ALJ's references to "normal" findings are both vague and belied by the very records she cites. There is significant evidence, qualitative (e.g., physicians' observations) and quantitative (e.g., PHQ-9 and GAD-7 scores), within Mr. Walker's medical records that indicate his condition was far from "normal." Tr. 543, 557, 561, 564, 569, 572, 575, 587, 590, 593, 596, 599, 603, 605-06, 610, 612, 618; *see also* Tr. 588, 607, 614.

This Court will not reverse an ALJ simply because substantial evidence supports a decision different from the one she made. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). But

here, substantial evidence does not support the ALJ's conclusion. *Kuikka*, 2018 WL 1342482, at *10. While an "ALJ is not required to explain all the evidence in the record[,]" she may not pick and choose from the evidence and rely on only that which supports her conclusion. *Nelson v. Saul*, 413 F. Supp. 3d 886, 916 (E.D. Mo. 2019) (citing *Taylor ex rel. McKinnies v. Barnhart*, 333 F.Supp.2d 846, 856 (E.D. Mo. 2004)); *see also Fowler v. Bowen*, 866 F.2d 249, 252 (8th Cir. 1989) ("In determining whether the Secretary's decision is supported by substantial evidence on the record as a whole, the court must take into consideration the weight of the evidence in the record both for and against the conclusion reached."); *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability."); *Switzer v. Heckler*, 742 F.2d 382, 385–86 (7th Cir. 1984) ("[T]he Secretary's attempt to use only the portions [of a report] favorable to her position, while ignoring other parts, is improper.")). Selectively considering treatment notes is no exception. *Nelson*, 413 F. Supp. 3d at 916 (finding error when ALJ selectively read treatment notes); *Briggs v. Astrue*, No. 11-CV-6039-NKL, 2012 WL 393875, at *6 (W.D. Mo. Feb. 6, 2012) (reversing ALJ determination to discount opinion of treating physician based upon selective reading of physician's treatment notes). From the ALJ's opinion, it appears she did just that.

While the record does suggest that Mr. Walker at times presented with a normal mood and affect, almost every, if not every, visit to a medical provider reflects his active diagnoses of, and treatment for, Generalized Anxiety Disorder and Recurrent Major Depressive Disorder. *See* Tr. 580 (3/2/2021 Treatment Notes), 551 (9/1/2020 Treatment Notes), 468 (4/8/2020 Treatment Notes), 284–287 (9/03/2019 Treatment Notes), 297 (4/16/2019 Treatment Notes), 302 (3/19/2019 Treatment Notes), 308 (12/18/2018 Treatment Notes). And despite the "normal" notations, most of which are found in treatment notes from providers treating Mr. Walker for *physical*

impairments, there are still numerous references to Mr. Walker's mental impairments, including his anxiety and depression, and reports that the symptoms were worsening. *See, e.g.*, Tr. 541, 543–44 (1/11/2021 Treatment Notes); Tr. 545 (12/1/2020 Treatment Notes) (reporting concern from Mr. Walker about his mental ability to do his job), Tr. 296 (4/23/2019 Treatment Notes, observing that Mr. Walker was "[p]ositive for dysphoric mood and sleep disturbance" and nervous and anxious). Calling the results of Mr. Walker's examinations "normal" appears to ignore substantial portions of his medical records. *See Furstenau v. Saul*, No. 6:19-CV-03201-NKL, 2020 WL 3287947, at *3–4 (W.D. Mo. June 18, 2020) (finding error where ALJ pointed to various "normal" notations relevant to mental impairments in treatment notes that were unrepresentative of the full context of the treatment notes, for example, when the same treatment notes indicated depression and anxiety separate from a "normal mood and affect" notation and when treatment notes from mental health providers contradict those from providers treating physical ailments).

Furthermore, after Mr. Walker requested a referral for psychological treatment, his mental health providers always noted his depressed, discouraged, and anxious mood and his preoccupied attention. *See e.g.*, Tr. 557–559 (2/9/2021 Psychology Treatment Notes), 561 (1/26/2021 Psychology Treatment Notes), 564 (1/5/2021 Psychology Treatment Notes), 569 (12/16/2020 Psychology Notes), 572 (12/9/2020 Psychology Treatment Notes). He also reported that these symptoms made it difficult for him to go to work. Tr. 561 (1/26/2021 Psychology Treatment Notes), 575 (11/13/2020 Psychology Treatment Notes). Mr. Walker underwent PHQ-9 and GAD-7 screenings on October 22, 2019, April 14, 2020, and August 24, 2020; all three demonstrated severe levels of anxiety and depression. Tr. 558 (2/9/2021 Treatment Notes, summarizing past treatment and test results). Mr. Walker was again screened for depression in January 2021, and his PHQ-9 scores were again positive. Tr. 583.

Yet, the ALJ did not discuss any of this evidence. An ALJ may not base her conclusion "upon selective interpretation of isolated comments which downplay the effects of [a claimant's] impairments without taking [the] entire treatment record into context." *Briggs*, 2012 WL 393875, at *6; *see also Wenell v. Berryhill*, No. 4:18-CV-00098-NKL, 2018 WL 4219427, at *3 (W.D. Mo. Sept. 5, 2018) (finding error where ALJ selectively cited to "normal" findings when the larger treatment notes make clear the claimant was suffering from mental impairments). Because neither of the consulting physicians the ALJ credited had access to the evidence in question, which may be at odds with and might have altered their conclusions, and because the ALJ did not herself properly consider and evaluate the later-submitted evidence, substantial evidence does not support the ALJ's decision to credit Dr. Scher and Dr. Morgan, while completing rejecting Dr. Meadows.

For the same reasons, substantial evidence does not support the ALJ's determination that Dr. Meadows' opinion was inconsistent with the record, while the opinions of Dr. Scher and Dr. Morgan were consistent. An ALJ must consider, and explain her consideration of, an opinion's consistency with the record. *See* 20 C.F.R. § 404.1520c(a). As the Court has just explained, at length, the medical records do not contradict Dr. Meadows' opinion. There is significant evidence in the medical records—unaddressed by the ALJ—which demonstrate that not only were Mr. Walker's examinations not "normal," but they demonstrated limitations stemming from Mr. Walker's mental impairments. Specifically, Mr. Walker's anxiety and depression negatively impacted: his memory, comprehension, understanding, and his ability to focus and pay attention; his ability to handle stress, which has worsened over time, his ability to handle change; his ability to manage his personal hygiene; and his ability to handle the cognitive demands of his job. *See, e.g.*, Tr. 53–54; Tr. 214; Tr. 541; Tr. 545. These symptoms also fatigued Mr. Walker, which resulted in multiple naps per day. Tr. 272. The medical records also demonstrate that Mr. Walker

16

struggled to interact with many of his healthcare providers, including that he became angry, was overly reactive to little things, and was impatient. Tr. 587; Tr. 590; Tr. 594; Tr. 591. Dr. Meadows himself noted that Mr. Walker's "angry narratives about providers increase his willingness to speak against providers and to accuse them of treating him poorly." Tr. 565. This evidence directly supports Dr. Meadows and contradicts the ALJ and the consultative examiners she cites. This contradiction is completely unaddressed.

What's more, even though Mr. Walker at times presented with a normal mood and affect, the ALJ failed to account for "the waxing and waning nature" of mental impairments. *Nelson*, 413 F. Supp. 3d at 919. "Although the mere existence of symptom-free periods may negate a finding of disability when a physical ailment is alleged, symptom-free intervals do not necessarily compel such a finding when a mental disorder is the basis of a claim." *Andler v. Chater*, 100 F.3d 1389, 1393 (8th Cir. 1996); *see also Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) ("Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."). Even accepting that Mr. Walker was at times reported to show a normal mood, he also reported that his depression was worsening, and that he felt his mood fluctuating. Tr. 541 (1/11/2021 Sethi Treatment Notes). Because only impermissible selective reading could support the ALJ's conclusion that Dr. Meadows' opinion is not consistent with the record, it was not supported by substantial evidence.

Next, the ALJ—and now, the Commissioner—repeatedly emphasized that because Mr. Walker could help lift his wife's wheelchair, help with laundry and other minor household chores, take his dog out for walks, drive when necessary, shop in store and online, manage personal

finances, and enjoy watching television and being on the computer for limited periods of time, his personal activities contradict the severity of his impairments. Tr. 13–14, 17. The ALJ did not explain why these activities were inconsistent with the marked and moderate mental limitations that Dr. Meadows found, or his opinion that Mr. Walker would miss more than four days of work per month and be off task during the workday. Tr. 539 (Dr. Meadows' Opinion); *see also Banks v. Massanari*, 258 F.3d 820, 832 (8th Cir. 2001) ("[T]he ALJ's failure to consider the quality, frequency, and independence of [the claimant's daily activities], as required by SSR 85–16,[4] render suspect the use of these activities as probative evidence of [the claimant's ability to work]"). And, considering the record and Eighth Circuit law, substantial evidence does not support the ALJ's determination that Mr. Walker's limited use of the computer and television and his ability to perform certain basic necessities of life, in very limited conditions, contradict Dr. Meadows' conclusions. *Rainey v. Dep't of Health & Human Servs.*, 48 F.3d 292, 293 (8th Cir. 1995) (finding that evidence that the claimant "washed dishes, did light cooking, read, watched TV, visited with his mother, and drove to shop for groceries" did not support his ability to do full-time competitive work); *Martinez v. Comm'r of Soc. Sec. Admin.*, No. 6:18-03332-CV-RK, 2020 WL 39199, at *3 (W.D. Mo. Jan. 3, 2020) (finding ALJ erred by rejecting treating physician's opinion on account of daily activities because, among other things, ALJ failed to explain the conflict between the opinion and a claimant's activities); *see also Draper v. Barnhart*, 425 F.3d 1127, 1130 (8th Cir. 2005) (finding error where ALJ relied on daily activities such as household chores, laundry, grocery shopping, and mowing to discount subjective complaints of pain when those activities did not suggest that claimant could work at the requisite level).

---

[4] Social Security Rulings ("SSRs") are not binding, however the Eighth Circuit will generally defer to them unless they are "plainly erroneous or inconsistent with the [Social Security Act] or regulations." *State of Minn. v. Apfel*, 151 F.3d 742, 748 (8th Cir. 1998) (internal citations omitted).

This is because, at bottom, a claimant "must have the ability to perform the requisite acts day in and day out, in the sometimes competitive and stressful conditions in which real people work." *Thomas v. Sullivan*, 876 F.2d 666, 669 (8th Cir. 1989). The Eighth Circuit has repeatedly observed that "'the ability to do activities such as light housework and visit[] with friends provides little or no support for the finding that a claimant can perform full-time competitive work.'" *Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005) (quoting *Burress v. Apfel*, 141 F.3d 875, 881 (8th Cir. 1998)); *Banks v. Massanari*, 258 F.3d 820, 832 (8th Cir. 2001) ("How many times must we give instructions that [watching television, visiting friends, and going to church] do not indicate that a claimant is able to work full time in our competitive economy?"). "This admonition underscores that portion of SSR 85-16 which references the need to consider the frequency and independence of activities performed by the claimant, as well as the claimant's ability to sustain these activities over a period of time." *Reed*, 399 F.3d at 923. While an ALJ may certainly rely on daily activities to discredit a claimant's subjective complaints, there must be an actual inconsistency. Here, substantial evidence does not support the ALJ's determination that there is one between the mental limitations Mr. Walker identifies and his daily activities. *See Lucus v. Saul*, 960 F.3d 1066, 1069 (8th Cir. 2020) ("[W]e do not understand the purported inconsistencies identified by the ALJ. And '[a]bsent some explanation for finding an inconsistency where none appears to exist,' we will not fill in the gaps for the ALJ." (citing *Reed*, 399 F.3d at 921)).

Third, the ALJ determined that Dr. Meadows' opinion was contradicted by Mr. Walker's conservative course of treatment. The ALJ stated, without explanation, that Mr. Walker underwent a conservative course of treatment. Tr. 13, 17. As an initial matter, the ALJ did not explain why this is true for Mr. Walker's mental impairments, when she discussed only his treatment for physical impairments. And, at least with respect to Mr. Walker's anxiety and depression, the

record demonstrates the opposite. Mr. Walker himself requested referral for psychological treatment, tried to manage his anxiety and depression with multiple different medications and changed those medications when they did not produce results, and consistently attended therapy every two-to-four weeks. Tr. 282, 543, 582, 545 (discussing medication); Tr. 556–77, 584–618) (therapy notes). As the Commissioner's regulations make clear, "[p]ersistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent." SSR 16-3p.

While the Court will not substitute its judgment for the ALJ's, there must be some evidence to support the ALJ's conclusion and she must provide enough detail and explicit analysis to enable meaningful judicial review. *St. Clair v. Colvin*, 12-cv-4250, 2013 WL 4400832, at *2 (W.D. Mo., Aug. 14, 2013) (citing *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)); *see also Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012) ("This court upholds an ALJ's decision if the evidence supports the decision and the ALJ explains [her] analysis of the evidence with enough detail and clarity to permit meaningful review . . . Although an ALJ need not mention every snippet of evidence in the record, the ALJ must connect the evidence to the conclusion[.]") (internal citations omitted). Neither is true here. Because the ALJ did not explain the metrics by which she analyzed the extent of Mr. Walker's treatment, and because, regardless of the metric, no evidence exists to support the ALJ's conclusion, the Court must reverse. *See generally Martinez v. Comm'r of Soc. Sec. Admin.*, No. 6:18-03332-CV-RK, 2020 WL 39199, at *3 (W.D. Mo. Jan. 3, 2020) ("The ALJ's second reason for disregarding Dr. Mendez's opinion was that she 'sees the claimant only infrequently . . . . However, the ALJ did not explain how often a patient with the mental

impairments noted by Dr. Mendez would be expected to see a psychiatrist or how many visits would be needed for Dr. Mendez to form a persuasive opinion.").

At bottom, for the reasons discussed, substantial evidence does not support the ALJ's decision to credit Dr. Scher and Dr. Morgan—both of whom formed their opinions without reviewing substantial portions of Mr. Walker's relevant medical records and without ever having examined or treated Mr. Walker—and discount the opinion of Dr. Meadows, the only physician to offer an opinion with the benefit of Mr. Walker's full mental health records and a lengthy treatment relationship.

## IV.    Scope of Remand and Conclusion

Since the Court concludes that the ALJ erred by finding Mr. Walker's mental impairments to be not severe, the ALJ's RFC determination, and the steps that follow, will necessarily be impacted. Consequently, these errors were not harmless because the Court "cannot determine whether the ALJ would have reached the same decision denying benefits[] even if [the ALJ] had followed proper procedure." *Lucus v. Saul*, 960 F.3d 1066, 1070 (8th Cir. 2020) (*quoting Brueggemann v. Barnhart*, 348 F.3d 689, 694 (8th Cir. 2003)); *see also Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012) ("To show an error is not harmless, [the claimant] must provide some indication that the ALJ would have decided differently if the error had not occurred."). [5] Therefore, remand is appropriate.

On remand, the ALJ should reconsider the impacts of Mr. Walker's mental impairments considering the Court's resolution of Mr. Walker's challenges above. Because the Court has

---

[5] Mr. Walker suggests that finding his mental health impairments severe at Step Two would necessitate a finding of disability. This argument is not sufficiently developed, and in fact it appears to have been abandoned on Reply. Regardless, the ALJ, not the Court, should address the impact of Mr. Walker's severe mental impairments in the first instance.

determined that Mr. Walker's anxiety and depression are severe impairments, the ALJ should proceed through the sequential analysis accordingly.

The ALJ's decision is REVERSED and REMANDED for further action consistent with this Order.

/s Nanette K. Laughrey

NANETTE K. LAUGHREY
United States District Judge

Dated: 8/1/2022
Jefferson City, Missouri